**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| MICHAEL DRIGGS, *et al.*, ) ) Plaintiffs, ) ) v. ) ) CENTRAL INTELLIGENCE AGENCY ) ) Defendant. ) ) | Case No. 1:23-cv-1124 (DJN) |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR CLARIFICATION

Defendant, through its undersigned counsel, respectfully submits this memorandum of law in support of motion for clarification of the Court's January 30, 2024 Order (Dkt. 13). Undersigned counsel contacted Plaintiffs' counsel regarding their position on the requested relief, and Plaintiffs have indicated that they do not oppose Defendant's motion.

### INTRODUCTION

This is a Freedom of Information Act ("FOIA") action brought against the Central Intelligence Agency ("CIA") in connection for a multi-part request for records seeking a large swath of sensitive and historical records pertaining to prisoners of war from the Korean War. The CIA has completed its search of potentially responsive records and is in the midst of processing those records in order to respond to Plaintiffs' FOIA requests. Consistent with its obligations under the FOIA, the CIA is currently ensuring that all duplicate records are removed, assessing those records to determine if they are responsive to the request, sending records to other government agencies for consultation or their own separate review, and – of premier importance here given the unquestionable national security context in which these records arise – analyzing

1

the records to determine what information to withhold pursuant to FOIA's exemptions. This, in addition to reviewing the records for national security concerns, is an inherently complicated and time-consuming process that places a strain on the CIA—especially when it is facing significant staffing constraints and an ever increasing FOIA backlog, including obligations established by multiple court orders across various jurisdictions.

At a recent status hearing, the Court indicated that the CIA was to "resolve as much of this [case]" as it could in 30 days, so as to facilitate a productive meet and confer with Plaintiffs with an eye towards resolving this case. The CIA appreciates the Court's desire to swiftly resolve this matter and to resolve it amicably with Plaintiffs, without much (if any) judicial intervention. However, by March 1, 2024 the CIA simply cannot complete the necessary processing steps for all records related to this FOIA request. After extensive discussion in the wake of this Court's status conference, and an analysis of the Agency's resources and competing court-ordered obligations, the CIA can commit to reaching full resolution—complete processing of all potentially responsive records (approximately 7,500 pages)—in one year. The CIA now moves the Court, for the reasons explained in greater detail below, to clarify if the remarks made during the hearing that informed the Court's disposition in its January 30, 2024 Order (Dkt. No. 4) contemplate the one-year process the CIA needs (in conjunction with other federal agencies) to complete the final response to Plaintiffs' FOIA request.

## BACKGROUND

Before proceeding to a discussion of *this* civil action, it is important first to explain a prior action brought in the United States District Court for the District of Columbia, seeking relief with respect to a prior FOIA request submitted to the CIA by a number of the Plaintiffs here regarding the same subject matter (*i.e.*, Korean War prisoners of war).

1.      On November 25, 2019, Robert Moore, Jana Orear, Christianne O'Malley, and Mark Sauter – all of whom are Plaintiffs in this civil action – submitted a multi-part FOIA request to the CIA seeking records related to Korean War prisoners of war. Six months later, on April 20, 2020, these same individuals then filed a civil action in the District of Columbia, seeking to compel the CIA to respond to the FOIA request. *See Moore v. CIA*, 1:20cv1027 (D.D.C.) (Dkt. No. 1).

The District of Columbia court (Lamberth, J.) authorized the CIA to continue its resolution of Plaintiffs' FOIA request through rolling productions over fourteen (14) months' time – between August 2020 and October 2021 – with the CIA filing status reports with the court approximately every sixty (60) days. *See id.* (Dkt. Nos. 12-20). After the CIA completed its processing of records pursuant to Plaintiffs' request, the parties filed cross-motions for summary judgment regarding the adequacy of the CIA's search for responsive records and withholding of certain records pursuant to FOIA's exemptions. *See id.* (Dkt. Nos. 21; 25-27; 31-32). Through a memorandum opinion dated July 28, 2022, the District of Columbia court denied Plaintiffs' motion in full, and granted the CIA's motion in part. *See id.* (Dkt. No. 40-41), *available at* 2022 WL 2983419 (D.D.C. July 28, 2022). With respect to the CIA, the District of Columbia court held that the agency had "for the most part" acted correctly in applying FOIA's exemptions; the court only rejected the CIA's use of a so-called "*Glomar* exemption" with respect to two parts of Plaintiffs' FOIA requests, and required the CIA to perform some additional analysis before the Court would re-evaluate its response. *Id.*

The CIA completed its additional analysis by April 2023, at which point it alerted the District of Columbia court that it was ready to renew its motion for summary judgment. *Id.* (Dkt. No. 48). And although Plaintiffs could have obtained review of its contention that the CIA was required to search its operational files here – with a court that already had institutional knowledge

3

of the complex FOIA-related issues related to their request – that motion was never filed, because *Plaintiffs* elected to voluntarily dismiss their FOIA action. *Id.* (Dkt. No. 49).[1]

2. The reason for Plaintiffs' litigative decision became immediately apparent, as on July 12, 2023, Plaintiffs – now joined by other individuals – submitted a new FOIA request to the CIA regarding Korean War prisoners of war, one that sought essentially the same information as the one described above. Plaintiffs then initiated this civil action in *this Court* on August 24, 2023, Dkt. No. 1, and Defendant timely responded to the Complaint on October 12, 2023, Dkt. No. 8. About four months later, on January 18, 2024, the matter was reassigned from the Honorable T.S. Ellis, III to the Honorable David J. Novak. Dkt. No. 11. Soon after the reassignment, the Court set the matter for a status conference on January 30, 2024.

At the status conference, as the Court is undoubtedly aware, undersigned counsel informed the Court that this was a complicated FOIA request imbued with national security issues, and that the CIA had just completed its search for potentially responsive records. In the ensuing colloquy between the Court and Plaintiff's counsel, the Court indicated that the "Government [was] to sit down with [its] client within the next 30 days and resolve as much of this stuff as you can resolve." DEX 1 at 4:19-22. As part of that charge, the Court told undersigned counsel to "answer the questions that Mr. Clarke" had asked about whether the CIA would search its operational files, assert collateral estoppel, and accord one Plaintiff "news media" status under FOIA, "and then in 45 days you're going to file a joint pleading telling me what's in dispute and what's not." DEX 1,

---

[1] It is for this reason that the CIA, before this Court's recent status conference, contemplated the filing of a motion to transfer venue over this civil action to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1404(a), which provides that for convenience purposes, "a district court may transfer any civil action to any other district . . . where it might have been brought." *See One Beacon Ins. Co. v. JNB Storage Trader Rental Corp.*, 312 F. Supp. 2d 824, 829 (E.D. Va. 2004) (holding that a § 1404(a) can be had either by motion of a party or *sua sponte*).

4

at 4:22-25.[2]  The Court further instructed "the government to resolve the vast majority of this such that there's not much in dispute" and imparted on counsel to "sort this through with [the CIA] and then produce as much stuff as you can, and that we can distill the dispute down to what we really need to fight about."  DEX 1 at 5:6-10, 7:7-10.

Against this background, the Court ordered "the parties to meet and confer regarding the materials at issue to resolve the case."  Dkt. No. 13.  If no agreement could be reached following that meet and confer, the Court directed "the parties to submit a <u>joint</u> pleading" that "identif[ies] which materials remain in contention, along with a brief summary of each party's position as to the remaining disputed materials."  Dkt. No. 13.

Consistent with the Court's instruction, the CIA has been diligently working to reach its final response to Plaintiffs' FOIA requests and complete the processing of the outstanding potentially responsive records identified in the CIA's search.  The CIA is anticipated to make its first release of responsive records by March 1, 2024 and will be prepared to inform Plaintiffs of its position regarding the three issues identified above.  Despite these efforts, CIA cannot finish releasing all of the potentially responsive records by March 1, 2024, and thus seeks clarification if the Court's Order permits the CIA to continue with rolling releases of records until its response is fully complete.

## **ARGUMENT**

The Court, through its inherent authority, has the power to "explain or clarify something ambiguous or vague" in its Order.  *United States v. Philip Morris USA Inc.*, 793 F. Spp. 2d 164, 168 (D.D.C. 2011).  In light of the Court's charge that the CIA was "to produce as much stuff as

---

[2] A transcript of the proceedings has been attached for the Court's and Plaintiff's convenience as Defendant's Exhibit ("DEX") 1.

[it] can," DEX 1 7:7-10, so that the parties could have a meaningful meet and confer between March 1, 2024 and March 22, 2024, the CIA seeks clarification as to whether it can continue processing any outstanding records in the request after March 1, 2024. If the Court's Order and directive require the final release and final processing of all potentially responsive records identified in its search by March 1, 2024, the CIA respectfully requests that clarification so that it might seek additional relief from the Court. As the exceptional circumstances show below, the CIA cannot complete all of its processing on the request before March 1, 2024.

### A. The CIA Has Limited Resources to Work Though its Ever Increasing FOIA Work Load, and Prioritizing this Case Will Cause CIA to Miss Other Court-Imposed Obligations

The CIA's limited resources for FOIA matters include a small team of individuals who are responsible for all FOIA-related processes[3] regardless of whether a FOIA request is in its initial stages within the Agency or in litigation. The number of FOIA requests directed to the CIA continue to increase; in the first quarter of Fiscal Year 2024, the CIA observed an approximately 140 percent increase in initial requests compared to the same time period in the previous fiscal year. Additionally, due to the limited staffing on FOIA matters, there is a significant backlog in processing requests, some of which were filed with CIA over a decade ago. The finite number of resources and significant growth in all of CIA's review and release product lines indicate this backlog will continue to grow for the foreseeable future.

Staffing reassignments made for this case have put the CIA at risk of missing numerous court-ordered deadlines or court-adopted production schedules in other FOIA matters before federal district judges in multiple jurisdictions. Courts overseeing other matters involving

---

[3] These include the intake of and issuing correspondence to requestors; processing of records; providing productions to requestors; responding to coordination requests from other government agencies, etc.

similarly sized document productions have adopted or ordered rolling productions by the CIA, many on a periodic basis and over multiple years.  Due to the complexity of CIA record review, both generally and in this case, and the limited number of personnel qualified to perform it, the CIA has had to remove most of its FOIA personnel from other matters to work solely on the request at issue here.  These reassignments likely will cause the CIA to miss—or seek relief from—multiple upcoming court-ordered FOIA production deadlines.  The CIA's staffing level for this case will have to revert to its initial staffing level after its first production in order to meet future court deadlines and to ensure equitable treatment of the courts and FOIA requesters.

>   B.   **Given the CIA's Resource Constraints, the Complexity of Plaintiffs' Request, and the Need to Consult Other Government Agencies, It will Take at Least One-Year to Complete Processing of Plaintiffs' Request**

In the face of these limited resources, the CIA continues to diligently work on Plaintiffs' request and has dedicated significant resources – including the reassignment of personnel working on other FOIA-related matters to ensure it can complete its first release of records by March 1, 2024.  Given the volume of responsive records, which spans hundreds of documents and exceeds 7,500 pages, the CIA estimates that it will take at least one year to fully process Plaintiffs' request, at staffing levels that will allow CIA to meet its court- and statutorily-mandated obligations in other matters.  Processing these records is further complicated by the age of the documents and the variety of classified equities they contain.  The condition of some documents, certain of which are illegible and/or are not in a computerized format, has also increased the necessary review time.  Many of the documents include handwritten notations or, because they were in paper copy, have deteriorated over time.  Each of these documents must be thoroughly examined to determine classification level, whether the information they contain is subject to one or more FOIA exemptions, and whether other government agency equities may be implicated.  Further, the CIA must handle FOIA records consistently; because some of the Plaintiffs in the instant matter have

7

requested similar or identical documents in prior requests, the CIA must undertake a process to determine, *inter alia*, which documents have been processed previously, how these documents were handled, and whether new information or developments require them to be handled differently in this matter. Only then can the CIA process—or in some cases, reprocess—the documents for inclusion in a production for Plaintiffs.

As part of the FOIA process, the CIA must also determine whether the information at issue is, in fact, CIA information or whether the information at issue belongs to another government agency. If the CIA identifies responsive records originated by other Federal agencies or CIA records containing other Federal agency information the CIA must forward those records to those other departments or agencies for appropriate action, which may include a determination as to whether the information may be released to the requestor. *See* 32 C.F.R. § 1900.22(b); *see also* 5 U.S.C. § 552(a)(6)(B)(iii)(III). Once the CIA identifies the departments or agencies requesting review, the CIA must wait for those departments and/or agencies to respond. The CIA cannot predict or guarantee the timing of responses from other agencies.[4] Indeed, it is wholly beyond the CIA's control once a record is sent to another agency or government component. The CIA has begun coordinating with other departments and agencies; however, the CIA identified that ***thousands of pages*** will need to be coordinated with approximately ten departments and agencies to determine if information may be released to Plaintiffs. The CIA will be consulting with many of these same agencies in a separate matter concerning a comparable page count to meet an

---

[4] The team of individuals responsible for CIA's FOIA matters also are responsible for responding to other agencies and reviewing their coordinated document requests. Due to the volume of consultation and coordination requests from other government agencies and limited staffing resources, the CIA's own backlog in responding to consultation requests is considerable, with some requests exceeding 15 years. Given CIA's limited resources, it is expected that as resources are diverted to other FOIA matters, the delay in responding to other government agencies will continue to grow.

established court deadline for later this year before a different court.  If this court were to mandate consultations of thousands of pages in this matter on a timeline that requires those agencies to review these documents simultaneously and choose which matter to prioritize, it may lead to neither deadline being met.

*   *   *

To be sure, in seeking this relief, the CIA acknowledges, understands, and appreciates the Court's stated goal that this case be resolved swiftly and that the parties should be working to resolve this matter as much as they can without the Court's intervention.  The CIA has honored the Court's express directive by preparing an initial release of records on March 1, 2024 and will be likewise prepared to have a productive meet and confer with Plaintiffs' counsel regarding the nature and breadth of its search, collateral estoppel, and status as a news media organization.  It will certainly be in a position to continue to process potentially responsive records and make rolling releases of responsive records every 90 days until complete.  While the CIA will need at least one year to complete the process, it understands that all might want the process to complete sooner.  DEX 1, at 7:7-10.  *See also Am. Ctr. for Law & Just. v. U.S. Dep't of Homeland Sec.*, 573 F. Supp. 3d 78, 83-84 (D.D.C. 2021) (explaining that FOIA writ-large is causing agency-wide backlogs and if in litigation can "take years to resolve").  As such, the CIA therefore seeks the Court's clarification that its processing efforts may continue beyond March 1, 2024.

## CONCLUSION

For all the above reasons, Defendant respectfully requests that the Court grant its motion to clarify the terms of its January 30, 2024 Order.

//

//

Dated: February 27, 2024

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

*By*: _____/s/_____
DENNIS C. BARGHAAN, JR.
Deputy Chief, Civil Division
MATTHEW J. MEZGER
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:   (703) 299-3891/3741
Fax:   (703) 299-3983
Email: Dennis.Barghaan@usdoj.gov
       Matthew.Mezger@usdoj.gov

*Counsel for Defendant*