IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

MICHAEL DRIGGS, *et al.*,
    Plaintiffs,

v.                                            Civil No. 1:23cv1124 (DJN)

CENTRAL INTELLIGENCE AGENCY,
    Defendant.

**MEMORANDUM ORDER**
**(Denying Search of Operational Files)**

This Freedom of Information Act ("FOIA") matter comes before the Court largely of its own volition. On March 22, 2024, the 13 Plaintiffs in this case filed a Memorandum of Law in support of their contention that Defendant the Central Intelligence Agency "is required to conduct a search of its operational filed under 50 U.S.C. § 3141."[1] (ECF No. 19 ("Mem.") at 6.) Plaintiffs' Memorandum included no accompanying motion and requested no relief from the Court. Nevertheless, because the parties believe the operational-files issue to be "ripe for the Court's review" (ECF No. 24 at 2), the Court addresses Plaintiffs' Memorandum now. The Court finds Plaintiffs' request improper in substance and form, so it CONSTRUES Plaintiffs' Memorandum (ECF No. 19) as a motion and DENIES it.

### I.    LEGAL CONTEXT

Understanding of this case's procedural history requires a review of the statutes that apply to Plaintiffs' claims — the FOIA and the CIA Information Act (the "CIAIA"). The "basic

---

[1] The Plaintiffs are Michael Driggs, Robert Moore, Jana Orear, Christianne O'Malley, Thomas Michael Logan, David Logan, Megan Marx, Terri Mumley, John Zimmerlee, Carol Hrdlicka, George "Luck" Patterson, Mark Sauter and The POW Investigative Project, Inc. (ECF No. 1 ("Compl.") ¶¶ 2–14.) For the sake of convenience, the Court refers to "Plaintiffs" collectively and to Defendant as "the CIA."

thrust" of the FOIA was to "pierce the veil of administrative secrecy and open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 360 (1976) (quotation omitted). To give that public policy effect, the FOIA commands as a general matter that "each agency" in the federal government, upon receiving a "request for records," "shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). But because "public disclosure is not always in the public interest," the FOIA contains nine enumerated exemptions from disclosure. *Zaid v. Dep't of Justice*, 96 F.4th 697, 704 (4th Cir. 2024) (quotation omitted). The FOIA's "strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).

The issue before the Court must be analyzed through the lens of the FOIA's third exemption, which states that the FOIA does not apply to documents "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). Exemption 3's applicability "depends [not] on the detailed factual contents of specific documents" but rather on "the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Morley v. CIA*, 508 F.3d 1108, 1126 (D.C. Cir. 2007) (quoting *Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987)). The "relevant statute" here is the CIA Information Act of 1984 (codified at 50 U.S.C. § 3141 *et seq.*), so the Court must next survey that statute.

Until the CIAIA was enacted, the FOIA applied to the CIA "in precisely the same manner that it applie[d] to other federal agencies." H.R. Rep. No. 98-726(I), at 4 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3741, 3742.[2] But the CIA's operational files, which "contain[] the most

---

[2] It should go without saying that legislative history does not change the words of the statute and cannot bind the Court. However, because the legislative history of the CIAIA sets out

2

sensitive information directly concerning intelligence sources and methods," rarely contained information that could be disclosed to FOIA requesters. *Id.* at 5. Congress therefore imposed a *per se* rule that would reduce the endless administrative burden on the CIA of searching and then inevitably exempting its operational files from FOIA disclosure.

Where the CIAIA applies, it defangs FOIA's provisions almost entirely. It provides that the Director of the CIA "may exempt" that agency's "operational files" from "publication[,] disclosure, or search or review in connection therewith." 50 U.S.C. § 3141(a). The statute defines "operational files" to include:

> (1) files of the National Clandestine Service which document the conduct of foreign intelligence or counterintelligence operations or intelligence or security liaison arrangements or information exchanges with foreign governments or their intelligence or security services;
>
> (2) files of the Directorate for Science and Technology which document the means by which foreign intelligence or counterintelligence is collected through scientific and technical systems; and
>
> (3) files of the Office of Personnel Security which document investigations conducted to determine the suitability of potential foreign intelligence or counterintelligence sources[.]

*Id.* at § 3141(b). In April 2015, the Director exempted 21 different categories of operational files pursuant to subsection (a). Letter from Joseph W. Lambert to Stephen Aftergood 2–3 (Oct. 26, 2016), https://sgp.fas.org/othergov/intel/cia-opfiles-2015.pdf [https://perma.cc/M96G-PGEH].[3] The CIA has characterized six of those exempted categories as "[f]iles within the Directorate of Operations"; four as "[f]iles within the Directorate of Science and Technology"; and 11 as "[f]iles within the Office of Security." *Id.* By operation of subsection (a), the CIA "need not

---

well-informed and contemporaneous commentary on the act's terms, the Court finds this legislative history enlightening and useful.

[3] Plaintiffs have not indicated which categories of exempted operational files they want the CIA to search.

3

even *search* [these 21 categories] for requested information." *Judicial Watch, Inc. v. CIA*, 310 F. Supp. 3d 34, 38 (D.D.C. 2018) (Ketanji Brown Jackson, J.) (emphasis in original).

The designation of certain operational files as exempt does not end the matter. To begin with, the CIAIA itself provides FOIA requesters with two useful exceptions to its strict default rule. Under 50 U.S.C. § 3141(c), three categories of operational files remain subject to the FOIA "[n]otwithstanding subsection (a)."[4] And under 50 U.S.C. § 3141(d), non-exempt files that "contain information derived or disseminated from exempted operational files" can be disclosed irrespective of the FOIA-exempt source of the information in them. In addition to these statutory exceptions, the CIAIA provides a narrow path for judicial review. If a court finds that the CIA "improperly withheld requested records because of failure to comply with any provision of [§ 3141], the court shall order the [CIA] to search and review the appropriate exempted operational file[s]" and, if appropriate, to disclose the records it improperly withheld. 50 U.S.C. § 3141(f)(6).

Subsection (f) establishes a procedural framework to govern cases challenging the CIA's compliance with § 3141. In establishing that framework, Congress created special pleading rules for two specific kinds of § 3141(f) claims. If a "complaint alleges that requested records were improperly withheld because of improper placement solely in exempted operational files," the plaintiff must "support such allegation with a sworn written submission." 50 U.S.C. § 3141(f)(3). As the House Intelligence Committee understood this provision, it would apply where a plaintiff "argues that if the records requested were properly filed where they should be

---

[4] These three exceptions comprise information regarding (1) "United States citizens or [permanent residents] . . . who have requested information on themselves"; (2) "any special activity the existence of which is not exempt from disclosure"; and (3) "the specific subject matter" of certain investigations "for any impropriety . . . in the conduct of an intelligence activity." 50 U.S.C. § 3141(c).

4

filed, they would be outside exempted operational files and would therefore be subject to the search, review and disclosure requirements of the FOIA." H.R. Rep. No. 98-726(I) at 34. Alternatively, if a plaintiff "alleges that requested records were improperly withheld because of improper exemption of operational files," the CIA must respond by providing "sworn written submission that exempted operational files likely to contain responsive records currently perform the functions set forth in [§ 3141(b)]," which the plaintiff can then dispute with a "sworn written submission" of the plaintiff's own. 50 U.S.C. § 3141(f)(4). In this kind of challenge, a plaintiff does not dispute "the propriety of the [CIA's] decision to put the requested records into properly exempted files." *Judicial Watch*, 310 F. Supp. 3d at 41. Rather, a § 3141(f)(4) challenge asserts that "the files themselves have been improperly designated as "operational" files, and thus, inappropriately exempted from the FOIA." *Id.*

These two special pleading requirements do not exhaust the universe of possible challenges. So long as a plaintiff asserts that the CIA has "fail[ed] to comply with any provision of [§ 3141], judicial review shall be available under the terms set forth in [5 U.S.C. § 552(a)(4)(B)]." 50 U.S.C. § 3141(f). If a plaintiff demonstrates such a failure, a search of operational files can be compelled by the Court.

## II.   FACTUAL BACKGROUND

This FOIA suit seeks CIA records concerning Americans allegedly held as prisoners of war ("POWs") following the Korean War. Not all of the Plaintiffs are new to this cause. Four of the Plaintiffs (Robert Moore, Jana Orear, Christianne O'Malley and Mark Sauter) (together, the "Moore Plaintiffs") have been litigating FOIA cases regarding American POWs for at least seven years. *See Sauter v. Dep't of State*, No. 1:17-cv-1596, 2019 WL 3431153, at *1 (D.D.C. July 30, 2019) (case filed in 2017); *Moore v. CIA*, No. 1:20-cv-1027, 2022 WL 2983419, at *1 (D.D.C. July 28, 2022) (case filed in 2020). When the Moore Plaintiffs' most recent FOIA case

ran aground in the District of Columbia, they crossed the Potomac and tried again in the Eastern District of Virginia.  That effort resulted in this civil action.

The Moore Plaintiffs sued the CIA in the District of Columbia on April 20, 2020. Complaint, *Moore* (D.D.C. Apr. 20, 2020), ECF No. 1.  Over the next year and a half, the CIA slowly produced records, and the parties filed cross motions for summary judgment in December 2021 and January 2022.  In July 2022, Judge Royce C. Lamberth denied the Moore Plaintiffs' motion for summary judgment and partly granted the CIA's motion for summary judgment. *Moore*, 2022 WL 2983419, at *1.  In denying the Moore Plaintiffs' motion, Judge Lamberth noted that the Moore Plaintiff had "repeatedly state[d] that the CIA must search its operational files." *Id.* at *4.  Judge Lamberth reminded the Moore Plaintiffs that the CIA's operational files could not be searched without a showing of noncompliance with § 3141 — a provision that the Moore Plaintiffs "[did] not raise" and a showing that they failed to make. *Id.*

Judge Lamberth issued his summary judgment opinion in *Moore* on July 28, 2022. Nearly a month later, the Moore Plaintiffs moved to amend their complaint to plead the CIA's noncompliance with § 3141.  Motion for Leave to Amend Complaint, *Moore* (D.D.C. Aug. 25, 2022), ECF No. 42.[5]  The CIA opposed the Moore Plaintiffs' motion, and Judge Lamberth denied it in March 2023.  Judge Lamberth noted that the Moore Plaintiffs did not hide that their motion was motivated "at least in part by certain aspects of [Judge Lamberth's] initial summary judgment decision . . . , specifically the portion concerning operational files." Memorandum Order at 3, *Moore* (D.D.C. Mar. 30, 2023), ECF No. 46.  Apparently, the Moore Plaintiffs "did

---

[5] The Moore Plaintiffs' motion also sought to bring Michael Driggs — now a Plaintiff in this case — into the *Moore* case.

not know the CIA would be asserting a *Glomar* response"[6] until the CIA moved for summary judgment — but provided no reason that they had delayed until after Judge Lamberth had ruled against them. *Id.* Judge Lamberth found this to be undue delay. In addition, Judge Lamberth found that the Moore Plaintiffs' attempt to invoke § 3141(f) was futile, because the affidavits that the Moore Plaintiffs provided proved woefully insufficient to "demonstrat[e] that operational files were wrongfully withheld" and would not survive a motion to dismiss. *Id.* at 4–5.

In response to Judge Lamberth's second adverse ruling, the Moore Plaintiffs jointly stipulated with the CIA to dismiss their case pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). Joint Stipulation, *Moore* (D.D.C. Apr. 24, 2023), ECF No. 49. Less than three months later, on July 12, 2023, the Moore Plaintiffs and their proposed co-plaintiff Michael Driggs filed a new FOIA request with the CIA, now joined in their efforts by Mike Logan, David Logan, Megan Marx, Terri Mumley, John Zimmerlee, Carol Hrdlicka, George "Luck" Patterson, and the POW Investigative Project, Inc., a "nonprofit corporation" founded by Moore Plaintiff Mark Sauter. (ECF No. 1-1 ("FOIA Request") at 1; Compl. ¶ 14.) On August 16, 2023, having constructively exhausted their remedies under the FOIA, the Plaintiffs filed suit in this District.[7] (Compl. ¶¶ 18–20.)

---

[6] The infamous *Glomar* response answers a FOIA request by "neither admitting nor denying the existence" of the documents in question, on the theory that the very existence of responsive documents constitutes information that falls within a FOIA exemption. *ACLU v. Dep't of Def.*, 389 F. Supp. 2d 547, 557 (S.D.N.Y. 2005). The term takes its name from a series of FOIA cases seeking information on the CIA's secret ownership of the ship *Hughes Glomar Explorer*. *See, e.g.*, *Phillippi v. CIA*, 546 F.2d 1009, 1010–12 (D.C. Cir. 1976) (describing the CIA's refusal to either confirm or deny any connection to the vessel).

[7] Venue lies in this District because the CIA's records, like its headquarters, may presumably be found in Arlington County, Virginia. 5 U.S.C. § 552(a)(4)(B). In addition, Plaintiff Michael Driggs resides in this District, making it a proper forum under the FOIA and the CIAIA. *Id.* (permitting suit "in the district in which the complainant resides"); 50 U.S.C. § 3141(g)(3).

The CIA answered Plaintiffs' Complaint on October 12, 2023. (ECF No. 8.) On January 18, 2024, this case was transferred from Senior District Judge T.S. Ellis, III to the undersigned (ECF No. 11), and the Court held an initial pretrial conference with the parties on January 30 (ECF No. 13). At a subsequent pretrial conference on March 13, the Court directed the parties to craft a schedule for "rolling production" of the CIA's records that would facilitate efficient resolution of the case (ECF No. 22 ("Hr'g Tr.") at 4:21–25) and asked the parties to determine the issues that remained in dispute (*id.* at 5:8–12). Counsel for Plaintiffs noted that the parties had reached an impasse regarding the CIA's obligation to search its operational records and asked for permission to file Plaintiff's position on that issue. (*Id.* at 10:6–9.) The Court orally granted that permission. (*Id.* at 10:14.)

On March 22, Plaintiffs filed the Memorandum now at issue. (ECF No. 19.) Although the Memorandum sought no relief from the Court, the CIA responded to the Memorandum and urged the Court to "deny Plaintiffs' request for a search of the [CIA's] operational files." (ECF No. 21 ("Opp.") at 11.) In their Reply, Plaintiffs repeated their contention that the CIA had to search its operational files. (ECF No. 23.) In addition, on May 10, the parties represented to the Court that the operational-files issue stands "ripe for the Court's review." (ECF No. 24 at 2.) The Court therefore CONSTRUES Plaintiffs' Memorandum as a motion to compel a search of the CIA's operational files pursuant to Rule 37(a)(1) and proceeds to resolve it.[8]

---

[8] Although Plaintiffs never filed a motion requesting action by the Court, as required by Rule 7(b)(1), the Court exercises its discretion to overlook that procedural error.

### III.     ANALYSIS

Plaintiffs' arguments prove wholly inadequate to justify a search of the CIA's operational files, because they misapply the governing law.[9]  Plaintiffs argue that the circumstances of this case suffice to warrant a search of the CIA's operational files under the CIAIA.  As discussed above, to compel the CIA to search its operational files, Plaintiffs must show that the CIA "has improperly withheld requested records because of failure to comply with [a] provision of [50 U.S.C. § 3141]."  50 U.S.C. § 3141(f)(6).  Plaintiffs' Memorandum fails this elementary requirement, because the Memorandum nowhere explains how the CIA fell out of compliance with this § 3141.

To meet their burden under subsection (f)(6), Plaintiffs invoke subsection (f)(3).  However, that provision merely dictates the pleading standard that governs when a plaintiff seeks to make out an improper-placement claim; in support of such a contention, a plaintiff must provide a "sworn written submission, based upon personal knowledge or otherwise admissible evidence."  50 U.S.C. § 3141(f)(3).  Plaintiffs satisfy that pleading standard through affidavits attached to their complaint.  But, critically and fatally, subsection (f) does not require the Court to order a search of operational files on a mere satisfaction of the pleading standard.  Only § 3141(f)(6) gives the Court the power to order such a search, and to satisfy its requirements, Plaintiffs must show that the CIA has (1) withheld records (2) because of (3) noncompliance with § 3141.  The Court addresses that standard below, and it quickly concludes that Plaintiffs do not meet it.

---

[9]     The substantial overlap between the plaintiffs, subject matter and counsel in *Moore* and this case motivated the Court to ask for the parties' "respective positions on the issue-preclusive effect of the *Moore* case on this action."  (ECF No. 18 ¶ 3.)  The parties discuss issue preclusion, as the Court requested.  However, the Court need not address issue preclusion at this time, because the Court finds no difficulty in rejecting Plaintiffs' contentions on the merits.

9

Plaintiffs' only gestures at satisfying the requisite test can be found in two bare paragraphs of their Complaint. (Compl. ¶¶ 28–30.) Those paragraphs reference Plaintiffs' declarations. Neither mentions § 3141. The first declaration, executed by former United States Senator Bob Smith, states that Mr. Smith has seen "hundreds of classified documents that could and should be released." (Compl. ¶ 28.) The second declaration, executed by Kevin Shipp, a former CIA officer, states much the same thing: Mr. Shipp avers that documents "relating to the fate of POWs . . . can clearly be released" without jeopardizing national security and thus ought to be declassified. (*Id.* at ¶ 29.)

Plaintiffs' declarants focus on whether the CIA over-classifies documents. Maybe so. But whether a document should remain classified has nothing to do with whether the CIA has "improperly withheld requested records because of failure to comply with any provision of [50 U.S.C. § 3141]." 50 U.S.C. § 3141(f)(6). Indeed, because Plaintiffs filed suit before the CIA produced any records, Plaintiffs categorically *could not have* satisfied subsection (f)(6)'s requirements, because Plaintiffs could not (and, indeed, do not) show that the CIA has withheld responsive records in the first place.

Indeed, even if Plaintiffs provided evidence that the CIA had withheld any records at all, and even if it were true that the documents at issue do not warrant classification, that assertion would not say even a word about the proper subject of a § 3141(f)(3) attack — "the propriety of the agency's decision to put the requested records into properly exempted files." *Judicial Watch*, 310 F. Supp. 3d at 41. As the Court's discussion of the CIAIA shows, an improper-placement theory of noncompliance with § 3141 requires demonstration not that the documents requested should be declassified, but that the documents requested have been withheld *solely* because they were erroneously placed within one of the 21 categories that currently stand exempt from the

FOIA under § 3141(a) and (b). Plaintiffs' declarations do not come close to satisfying the statute.[10]

## IV. CONCLUSION

If Plaintiffs seek an order to compel a search of the CIA's operational files, Plaintiffs must demonstrate how, if at all, the CIA has "improperly withheld requested records because of failure to comply with" the requirements of Section 3141. 50 U.S.C. § 3141(f)(6). When doing so, Plaintiffs must, at least, explain in what manner the CIA has violated the provisions of the CIAIA. Generalized accusations of overclassification do not suffice.

The Court FINDS that Plaintiffs have not carried their burden to establish demonstrate that the CIA "has improperly withheld records because of failure to comply with [the CIAIA]," and it thus lacks any power to order the CIA to "search and review the appropriate exempted operational file[s]." 50 U.S.C. § 3141(f)(6). Accordingly, although the Court exercises its discretion to CONSTRUE Plaintiffs' Memorandum (ECF No. 19) as a motion requesting relief, the Court hereby DENIES that motion.

Let the Clerk file a copy of this Memorandum Order and notify all counsel of record.

It is so ORDERED.

_/s/_
David J. Novak
United States District Judge

Richmond, Virginia
Date: May 21, 2024

---

[10] In their reply, Plaintiffs quote the CIA's opposition to their Memorandum, and they once again reprint portions of their Complaint for the Court's edification. (ECF No. 23 at 5–6.) Plaintiffs, however, do not explain why their Complaint, which focuses solely on the allegedly improper classification of responsive documents, shows that the CIA has failed to comply with the provisions of a statute that hinges nothing on whether a document has been classified or declassified.

11